# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JACK JUDGE, individually and on behalf of those similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>UNIGROUP, INC., MAYFLOWER TRANSIT, LLC. and UNITED VAN LINES, LLC.,<br><br>              Defendant. | Case No. 16-cv-6884<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff Jack Judge, on behalf of himself and those similarly situated, by his counsel, Andrew Schmidt Law PLLC, brings this action against Defendant UniGroup, Inc., Mayflower Transit, LLC and United Van Lines LLC:

## NATURE OF THE SUIT

1. This is a Fair Labor Standards Act Claim for unpaid minimum wages for moving van operators of household and commercial goods employed by Defendants UniGroup, Inc. ("UniGroup") and its subsidiaries Mayflower Transit, LLC ("Mayflower"), and United Van Lines LLC ("United") (together, the "UniGroup Defendants").

2. Mayflower Transit, LLC ("Mayflower") and United Van Lines, LLC ("United") (together, the "Van Lines Defendants") are two of the largest moving companies in the United States and have more than 600 agents (the "Agents") operating in every region of the United States.

3. The Agents are the primary owners of UniGroup. UniGroup is governed by representatives of the Agents.

4. The UniGroup Defendants, recruit, train, coordinate and control van operators and local movers to execute commercial and local personal moves of goods and materials both within and between several states.

5. Plaintiff Judge and those similarly situated worked for the UniGroup Defendants as van operators (the "Van Operators").

6. The Van Operators' main job responsibility was to pick up household and commercial goods in one or more locations, often hiring UniGroup approved laborers to help, drive to new locations, and unload the goods.

7. Although Plaintiff Judge wore a United uniform, he and the other Van Operators were required to carry loads for both of the Van Lines Defendants.

8. The UniGroup Defendants failed to track the Van Operators' hours of work beyond those hours tracked by the United States Department of Transportation (the "DoT").

9. In many weeks, the Van Operators were paid less than $7.25 for each hour that they worked.

10. For example, in many weeks Plaintiff Judge was "in the hole," meaning that he technically owed money for things such as the advance to pay the UniGroup Defendants, and was not given a paycheck.

11. The UniGroup Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, by failing to pay the minimum wage for all hours worked in each workweek when due.

12. The UniGroup Defendants' violations of the Fair Labor Standards Act were willful, malicious and deliberate.

13. The named Plaintiff seeks compensation for UniGroup Defendants' violations of the Fair Labor Standards Act, on his own behalf and on behalf of all similarly situated current and former van operators of the UniGroup Defendants.

## PARTIES

14. Plaintiff Jack Judge is a resident of Florida. Plaintiff Judge was employed by Defendant UniGroup from approximately February 2015 until March 2016. Plaintiff Judge's FLSA Consent to Sue is annexed hereto as Exhibit 1.

15. Defendant UniGroup, Inc. is a registered Missouri corporation with a principal business address of One Premier Drive, Fenton, Missouri 63026, which conducts substantial business nationwide, including in Illinois.

16. United and Mayflower are both registered Missouri corporations that share the same address with Defendant UniGroup. The Van Lines Defendants are tightly controlled subsidiaries of UniGroup, and both brands appear prominently on the UniGroup building.

17. According to Defendant UniGroup's website: "UniGroup is a $1.7 billion transportation company and parent of United Van Lines, the nation's leading corporate mover, and Mayflower Transit, the most well-known name in the moving industry. Between the two van lines, UniGroup handles one in three professional interstate moves."

## JURISDICTION AND VENUE

18. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, as this case arises under the laws of the United States. This action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

19. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), because all defendants transact significant business in the venue and the named Plaintiff has done work for the defendants in the venue.

20. The UniGroup Defendants do substantial business in the Northern District of Illinois including advertising their services and providing moving services.

21. The UniGroup Defendants have many Agents with business addresses in the Northern District of Illinois.

22. Plaintiff Judge was employed by the Defendants in the Chicago area during a week or weeks in which he was not paid the minimum wage for all hours worked.

## BACKGROUND

23. Defendant UniGroup is the parent company of Defendants Mayflower and United.

24. Defendants UniGroup, Mayflower and United are financially and operationally tied together and although United and Mayflower agents may compete for bidding for jobs, United, Mayflower, and UniGroup operate as one unit when it comes to controlling van operators.

25. The executives of the UniGroup Defendants are intertwined.

26. The UniGroup Defendants have the power to control the Van Operators engaged in personal and commercial moving operations located all over the United States, including Illinois.

27. The UniGroup Defendants' entire business centers around the moving of personal and commercial goods within and between states.

28. The UniGroup Defendants have invested heavily in their moving business, including in equipment and bureaucracy to maintain its reach and presence nationwide.

29. Defendants UniGroup, Mayflower and United each have annual gross revenues in excess of $500,000.

30. The UniGroup Defendants advertise this joint operation to drivers in their recruitment materials. For example they advertise together on the careerbuilder.com website:

"Together, United Van Lines and Mayflower Transit represent both the largest and the best known van lines this means more customer recognition, and more business for us...and you! We boast the largest "footprint"...with over 650 locations, in every state . . ."

"As a Van Operator in the Household Goods Fleet, operators will handle the movement of household goods items and a variety of other "pad-wrapped" shipments."

31. The UniGroup Defendants have the power to discipline and ultimately fire Van Operators that fail to follow its protocols, including its protocols related to accidents and maintaining proper logbooks.

32. The UniGroup Defendants control the manner of the Van Operators' work by mandating that they follow certain policies, wear uniforms, and meet specific hiring qualifications, including those required by the DoT, but also many that are specific to the UniGroup Defendants. The UniGroup Defendants exercise this control by maintaining the right to punish its employees through fines and suspensions, and by lowering their "driver score" which prevents them from acquiring loads that will pay enough to support their families.

**The UniGroup Defendants Control the Hiring of Van Operators.**

33. Defendant UniGroup manages and directs recruitment of Van Operators for Defendants Mayflower and United and their agents.

34. Defendants Mayflower and United have substantially identical Van Operator recruitment websites and mandate that their Van Operators follow substantially similar policies. The websites of both Defendants Mayflower and United each state "UniGroup has a variety of immediate openings for owner-operators, short or long-haul company drivers, household goods

movers and specialty products handlers. With more than 600 locations nationwide, we have the ability to match you with the perfect job in your desired location."

35. The websites of both Defendants Mayflower and United have an "apply now" link that brings the view to the same UniGroup on-line application website. That website, which is the entryway to being either an employee driver or an independent owner-operator, states: "Thank you for your interest in UniGroup. To apply for a driving position, please complete our online application for employment. Incomplete information will delay the processing of your application or prevent it from being submitted."

36. Defendant United maintains a Quality Labor Program that requires cross country movers to master of 150 skills and finish 200 hours of field training before working for Defendant United.

37. Defendant Mayflower has stated in publications that it "trains each employee in the proper methods for safely packing, loading and unpacking clients' possessions."

38. The UniGroup Defendants maintain certain qualifications for its Van Operators, which include:

  a. Verifiable, over-the-road, tractor-trailer driving experience with a Class "A" CDL; minimum of 30 days for regional and 1 year for nationwide routes;

  b. Must pass all company and DOT requirements, including roadside inspection reports (PSP), DOT medical screen, pre-qualification drug screen and criminal background investigation;

  c. Proven history of driving with a safe driving record; and

  d. Quality minded and customer-service oriented and has the power to prohibit certain drivers from being hired.

**The UniGroup Defendants Impose Accident Policies upon their Van Operators.**

39. The UniGroup Defendants have a unified Corporate Safety Policy regarding accidents for all of its Van Operators. Upon information and belief, the safety policies of Defendants Mayflower and United are directed and controlled by Defendant UniGroup.

40. Defendants Mayflower and United will not accept Van Operators for employment if they have more than one preventable accident while operating a commercial vehicle in the 12 months preceding their application and no more than two preventable accidents in the 36 months preceding their application.

41. After qualification with either Defendant United or Mayflower, any Van Operator who fails to report any accident by telephone within a workday to the corporate safety department and fails to submit a written report within 24 hours will be suspended. If a Van Operator fails to report an accident or otherwise attempts to conceal the facts concerning an accident, they will be barred from working for either Defendant Mayflower or United.

42. Defendants Mayflower and United reserve the right to suspend Van Operators from service pending an investigation into a serious accident, regardless of fault.

43. Defendants Mayflower and United will place any Van Operator on probation that has two preventable accidents in 12 months. Defendants Mayflower and United will disqualify a Van Operator if there is a third preventable accident in 12 months.

44. Defendants Mayflower and United have their own definition of "accident" for reporting purposes, which includes all accidents that the DoT deems recordable as well as all accidents that include damage to cargo or property in excess of $1000.

45. The UniGroup Defendants require the Van Operators to follow certain protocols in an accident, which mandates that drivers:

    a. Turn on four-way flashers and set out triangles;

    b. Summon police and/or emergency medical personnel;

    c. Assist injured persons, but do not move them unless their life is threatened;

    d. Get the name, address, phone number and all relevant information of all parties involved and get identifying information from the other vehicle; and

    e. Not admit liability, or make verbal or written statements of any kind concerning the accident to anyone other than the investigating officer, a representative of UniGroup, and/or the driver's insurance carrier;

46. The UniGroup Defendants maintain a point system for accidents of different severity levels and logs these totals for each operator in its "Van Operator's Total Performance" system. This is part of what's known as a Van Operator's "driver score." The UniGroup Defendants use this "driver score" to assign jobs to the Van Operators. The higher the Van Operator's "driver score," the more lucrative the job they're offered.

47. This rating system has four parts; claims performance, safety compliance, customer service, and updating frequency. In each of these areas the drivers receive a score from 1-5.

**The UniGroup Defendants Impose Strict Policies on their Drivers.**

48. The UniGroup Defendants enforce policies that dictate the manner in which Van Operators work and penalize Van Operators when they do not follow these policies. These policies relate to the use of logbooks, accident responses, and other safety policies. The UniGroup Defendants will levy fines and in some occasions, suspend Van Operators who do not follow these policies.

49. Specifically, and for example, on March 1, 2014 Defendants Mayflower and United instituted new safety policies for Van Operators, (the "2014 Safety Policies") including Plaintiff Judge and those similarly situated.

50. The 2014 Safety Policies included a "progressive intervention system" where the UniGroup Defendants would work with the Van Operators who violated certain safety policies. It further combined the penalty structure for hours of service violations, unsafe driving, driver fitness and vehicle maintenance.

51. The 2014 Safety Policies set out that for the first violation the Van Lines Defendants would institute an "intervention" and fine the driver $50. Subsequent violations included a $100 dollar fine and an automatic 7-day suspension, regardless of the source of the violation.

52. The 2014 Safety Policies increased the fine for Van Operators for late logbooks to $15 from $10, and also allowed Defendant Mayflower or Defendant United to directly suspend Van Operators.

53. The UniGroup Defendants further created an incentive program to directly pay Van Operators for safety compliance. As part of this program, Defendant UniGroup hosted safety-training sessions, including a web-based education system called UniGroup U.

54. The UniGroup Defendants maintain the right to compel the Van Operators to return to their headquarters in Missouri to take a logbook class, which includes training on electronic logging.

55. The UniGroup Defendants mandate that the Van Operators who have taken the logbook class continue using electronic logs and not paper logs. Failure to use the electronic log system, even if the system is broken, results in a fine of $15 per week until the system is repaired and the driver's logs can be certified.

56. For example, the Plaintiff was fined $100 in February 2016 following a UniGroup Home Office Safety department "counsel call" for inconsistent time on logs.

57. Sybil Nance, a safety compliance coordinator with UniGroup, sent an email from her UniGroup address with an attached letter on United letterhead. The letter gave specific instructions on how to fill in the log book, including for coffee breaks or "just going to the restroom," and stated further "Please make sure to get signed up for classes and get started on the ELD ASAP."

58. The letter also stated that "[a] van operator may be disqualified from van line service at any time they are deemed to be unable or unwilling to comply with FMCSR or van line policies." FMCSR is an acronym for Federal Motor Carrier Safety Regulations.

59. The UniGroup Defendants mandate that the Van Operators wear uniforms with their respective logos, along with black pants and shoes. As part of Defendant UniGroup's customer surveys, customers are asked whether their movers and drivers were wearing the proper uniform.

60. The UniGroup Defendants operate a subsidiary called Trans Advantage, which runs its online "company store" for the Van Operators. The company store handles "[l]easing, financing and selling new and used tractors, trailers, straight trucks, containers and other related equipment.." Trans Advantage also provides to drivers "storage vaults, uniforms, business forms, fuel and tire programs, packing material, advertising specialties and other transportation related services."

61. Van Operators are encouraged to buy their uniforms from Trans Advantage. Although they can technically buy the items from other UniGroup licensed vendors, they will not be considered "in uniform" unless the uniforms conform to the color, cut, and style shown on the Trans Advantage website.

62. The UniGroup Defendants require the Van Operators to maintain conformity with its graphics, including advertising and van signage. The most effective way for Van Operators to adhere to these requirements is through purchasing from Trans Advantage.

**The UniGroup Defendants Control the Manner of the Drivers' Work.**

63. The UniGroup Defendants mandate that the Van Operators hire and work with only UniGroup approved employees.

64. Upon information and belief, all of the UniGroup Defendants' trailers have a GPS tracking system that Defendant UniGroup uses to monitor its drivers and the drivers of its agents.

65. The UniGroup Defendants require the Van Operators to provide records of payments received and report them to Defendant UniGroup, who then retains such records.

66. The UniGroup Defendants require the Van Operators to insure their customers' goods by paying to the UniGroup Defendants a damage deposit in case of damage to customer's goods. Deductions are made from this deposit when customers make damage claims, despite the fact that the UniGroup Defendants offer and sell damage insurance to the customers.

**The UniGroup Defendants Control the Pay and Day-to-Day Operations of the Van Operators.**

67. Most Van Operators do not understand how their pay is calculated by the UniGroup Defendants.

68. The primary determinant of the Van Operators' pay is the work available, as certain loads are likely to generate higher pay and others will almost certainly cause a Van Operator to work for less than minimum wage.

69. The UniGroup Defendants control pay and often bring pay below minimum wage by, among other things, setting the routes, fining Van Operators, and charging them for damaged goods.

70. The Van Operators theoretically have the authority to control their routes on assignment from the UniGroup Defendants either directly or through their agents. However, because UniGroup sets very tight schedules that the Van Operators cannot alter, they have no real discretion other than where they can make rest stops along the way.

71. The Van Operators are not permitted to independently schedule assignments or advertise their services. The Van Operators are theoretically permitted to decline assignments from the UniGroup Defendants and agents, but because the dispatchers control the value of a load, a driver that declines a load will be left waiting for a new assignment and will be given a lower value load. Because of this, except in exceptional circumstances, Van Operators have no choice but to accept loads.

72. On trucks with GPS tracking, the UniGroup Defendants can and do remotely keep track of driving that they believe is unsafe or inconsistent with the logs and fine the drivers.

73. As noted above, the UniGroup Defendants have a "driver score" system for the Van Operators that provides a rubric for which Van Operators get assigned profitable loads.

74. Van Operators have agreed to an exclusive relationship to drive only with the UniGroup Defendants. During their period the Van Operators are entirely dependent upon the UniGroup Defendants for work.

75. The Van Operators are not permitted to provide moving services for companies other than the UniGroup Defendants during the term of their agreement.

76. Van Operators typically do not invest a significant sum into their work, other than to finance their truck and other various tools of the trade.

77. The Van Operators are skilled drivers and perform much of their job with that skill. However, their income is not related to any business skills they may or may not have. Rather, the

Van Operators' income is tied entirely to which jobs they are assigned by the UniGroup Defendants along with a certain amount of driving and packing skill and luck in avoiding mishaps.

78. The UniGroup Defendants keep the most relevant employment records showing many but not all of the hours of work in the logs, safety compliance reports, and records of payments on the jobs.

79. The UniGroup Defendants require that the van operators have a smart cellular phone with the D2 Link software installed.

80. This D2 Link software allows the UniGroup Defendants to communicate with the van operators directly by text messages.

81. The UniGroup Defendants charge the customers a fuel surcharge and then pay this directly to the Van Operators. This fuel surcharge is often the difference for the Van Operators between losing or making money on a job. UniGroup announced to its Van Operators through a communication on the D2 Link system that it was changing the fuel charge system on June 6, 2016 to either reduce or increase the total "line haul" amount instead of passing the fuel charge directly to the drivers.

## 216(b) COLLECTIVE ACTION ALLEGATIONS

82. Plaintiff Judge asserts his Count I claim under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

83. Pending any modifications necessitated by discovery, the named Plaintiff preliminarily defines the following classes:

> **216(b) Class**: ALL CURRENT AND FORMER VAN OPERATORS OF THE UNIGROUP DEFENDANTS, WHETHER OR NOT CATEGORIZED AS EMPLOYEES, TRAINEES, OR

13

INDEPENDENT CONTRACTORS, WHO WERE NOT COMPENSATED AT LEAST THE STATUTORY MINIMUM WAGE IN EACH WEEK WORKED

84. All potential 216(b) Class members are similarly situated because, among other things, they were all employees of Defendants and, upon information and belief, all suffered from the same policies of Defendants, including:

  a. They were paid by the job without regard to the number of hours worked;

  b. They each suffered from improperly made deductions from class members' paychecks; and

  c. The UniGroup Defendants failed to pay class members at least statutory minimum wage for each hour of work as mandated by the FLSA.

## CLAIMS FOR RELIEF

### COUNT I:
### BREACH OF THE FAIR LABOR STANDARDS ACT (FLSA)
### 29 U.S.C. §§ 201 *et seq.*
### AS AGAINST THE UNIGROUP DEFENDANTS

85. The named Plaintiff re-alleges and incorporates by reference all previous paragraphs of the Complaint as if fully rewritten herein.

86. The named Plaintiff asserts this claim on behalf of himself and the 216(b) Class pursuant to 29 U.S.C. § 216(b).

87. During all times relevant to this action, the named Plaintiff and all others similarly situated were employed by the UniGroup Defendants as defined by 29 U.S.C. § 203(g).

88. The UniGroup Defendants failed to pay the named Plaintiff and the 216(b) Class the statutory minimum wage for every hour of work.

89. During all times relevant to this action, the named Plaintiff and the 216(b) Class were employed by the UniGroup Defendants in an "enterprise engaged in commerce or in the production of goods for commerce" as defined by 29 U.S.C.§ 203(s)(1).

90. During all times relevant to this action, the named Plaintiff and the 216(b) Class were employed by the UniGroup Defendants for handling and otherwise working on goods or materials that had been moved in or were produced for commerce by any person.

91. The UniGroup Defendants individually each had annual gross revenue in excess of $500,000 and employed two or more persons, including the named Plaintiff, who handled and worked on materials which had been moved in interstate commerce.

92. The named Plaintiff and the 216(b) Class are individually covered by the Fair Labor Standards Act because they engaged in commerce or in the production of goods for commerce.

93. The UniGroup Defendants failed to pay the Plaintiff and the 216(b) Class the minimum wage required by the FLSA.

94. The named Plaintiff and the 216(b) Class are entitled to unpaid minimum wages, unpaid overtime wages, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**JURY DEMAND**

The Plaintiff demands a jury trial for all issues so triable.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court enter an order or orders:

a. Certifying an opt-in class pursuant to the FLSA, 29 U.S.C. §§ 201 et seq.;

b.  That appropriate notice of this suit and the opportunity to opt into it be provided to all potential members of the 216(b) Class;

c.  Awarding the Plaintiff and the 216(b) Class unpaid minimum wages, pursuant to 29 U.S.C. §§ 206 and 216;

d.  Awarding the Plaintiff and the 216(b) Class costs and attorneys' fees pursuant to 29 U.S.C. § 216(b);

e.  Awarding the named Plaintiff and the 216(b) Class liquidated damages;

f.  Granting such other relief as this Court deems just and proper.

Dated: June 30, 2016

Respectfully submitted,

/s/ Caryn C. Lederer
Matthew J. Piers
Caryn C. Lederer
Hughes Socol Piers Resnick & Dym, Ltd.
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
mpiers@hsplegal.com
clederer@hsplegal.com
Telephone No. (312) 580-0100
Facsimile No. (312) 580-1994

*Local Counsel*

/s/ Andrew Schmidt
Andrew Arthur Schmidt
*Pro Hac Vice Pending*
Andrew Schmidt Law PLLC
97 India Street
Portland, Maine 04101
andy@maineworkerjustice.com
Telephone No. (207) 619-0320
Facsimile No. (207) 221-1029

*Attorneys for Plaintiffs*