UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JACK JUDGE, et al.,

      Plaintiffs,

v.                               CASE NO. 8:17-cv-201-T-23TGW

UNIGROUP, INC., et al.,

      Defendants.

_____/

**<u>ORDER</u>**

Household-goods carriers Mayflower Transit, LLC, and United Van Lines, LLC, contract with independently owned moving companies ("agents"). (Doc. 47-1 at 3)  Through agency agreements, the agents provide transportation services under United's and Mayflower's federal motor-carrier authorities. (Doc. 47-1 at 3).  In turn, the agents contract under independent-contractor operating agreements ("agreements") with independent owner-operators.[1]  Each independent owner-operator "provide[s] driving and moving services" to his agent.  (Doc. 47-1 at 3)  The plaintiffs, independent owner-operators, entered into agreements with their respective agents, and each agreement purportedly "govern[s]

_____

[1] The complaint alleges that Mayflower and United are subsidiaries of UniGroup, Inc., (Doc. 19 at 1, ¶ 1) and that the agents are the primary owners of UniGroup (Doc. 19 at 2, ¶ 3).

the entire relationship" between the independent owner-operator and his agent. (Doc. 47 at 2)

The plaintiffs sue (Doc. 1) under the Fair Labor Standards Act for unpaid minimum wages.  The defendants move (Doc. 47) to compel arbitration and move (Doc. 43) to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure.  The defendants argue that the Federal Arbitration Act ("FAA") requires arbitration of the plaintiffs' claims, that the plaintiffs are not exempt from either the FAA or the Missouri Uniform Arbitration Act ("MUAA"), that the arbitration agreements preclude arbitration on a class or collective basis, that the defendants can enforce the arbitration agreements, and that the defendants acted consistently with their purported right to compel arbitration.  (Doc. 47)  The plaintiffs respond (Doc. 51) that the FAA exempts transportation employees, that no applicable state law compels arbitration, that the defendants lack a contractual right to compel arbitration, and that the defendants waived the right to compel arbitration.

**The Arbitration Agreement**

The FAA codifies a "strong federal preference for arbitration of disputes." *Musnick v. King Motor Co.*, 325 F.3d 1255, 1258 (11th Cir. 2003).  Under Section 4 of the FAA a party to a contract containing an arbitration agreement can move for an order compelling arbitration.  "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

submit.'" *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002)

(*quoting AT & T Techs., Inc. v. Commc'n*, 475 U.S. 643, 648 (1986)).

 Each agreement contains an identical clause that requires arbitration:

> Any dispute . . . arising in connection with or relating to this
> Agreement, its terms, or its implementation, including any allegation
> of tort or of breach of this Agreement or of violations of the
> requirements of any applicable government authorities, whether local,
> state, [or] federal . . . shall be fully and finally resolved by arbitration in
> accordance with . . . the Federal Arbitration Act . . . or, if the Federal
> Arbitration Act is held not to apply, the arbitration laws of the State of
> Missouri . . . .

(Docs. 47-3, 47-4, 47-5, 47-6, 47-7, 47-8, ¶ 24(a)).  Also, each agreement states that

"no consolidated or class arbitrations shall be conducted."  (Docs. 47-3, 47-4, 47-5,

47-6, 47-7, 47-8, ¶ 24(b))  Nothing in the clause, which requires arbitrating "any

dispute," exempts from arbitration an FLSA claim.  *See Lambert v. Austin Ind.*, 544

F.3d 1192, 1197 (11th Cir. 2008) (holding that a party must "clearly express" an

intent to exempt from arbitration a particular type of claim).  An arbitration

agreement containing a collective action waiver is enforceable under the FAA.

*Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014)

('[T]he FLSA contains no explicit provision precluding . . . a waiver of the right to a

collective action.").

**FAA Exemptions**

 The plaintiffs argue (Doc. 51 at 10) that the defendants cannot compel

arbitration because Section 1 of the FAA exempts transportation employees from

compelled arbitration.  Also, the plaintiffs assert that "the defendants cite solely to

the terms of the [agreements] in making their arguments [whether the plaintiffs were employees or independent contractors]" and that "the court . . . should order limited discovery and briefing on whether that contract in fact made the plaintiffs employees." (Doc. 51 at 13)  The defendants respond that the plaintiffs were independent contractors, that the transportation-worker exemption is inapplicable, and that the plaintiffs fail to meet "their burden [under Section 1] of establishing that they are not independent contractors." (Doc. 47 at 10–11)

The FAA embodies a "liberal federal policy favoring arbitration agreements," *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005), and any doubt about the "scope of arbitrable issues" is "resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  Also, a statutory exemption is construed strictly against the party who invokes the exemption's benefit.  *U.S. v. Endotec, Inc.*, 563 F.3d 1187, 1196 (11th Cir 2009).  "[A] district court has no authority to compel arbitration . . . where Section 1 exempts the underlying contract from the FAA's provisions." *Van Dusen v. Swift Transp. Co.*, 654 F.3d 838, 843 (9th Cir. 2011) (O'Grady, J.).  Section 1 exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 106 (2001) (holding that the Section 1 exemption is construed narrowly).

"A split of authority has developed about the meaning of 'contract of employment' in the context of owner-operators." *Owner–Operator Indep. Drivers Ass'n,*

*Inc. v. United Van Lines, LLC.*, 06–CV–219, 2006 WL 5003366 (E.D. Mo. Nov. 15, 2006) (Hamilton, J.).  As examined in *United Van Lines*:

> One line of cases holds that, unless the non-moving party proves to the Court that the FAA does not apply, the court should apply the characterization of the relationship described in the agreement and find that an owner-operator characterized as an independent contractor does not have a contract of employment with the carrier. . . . Other cases have come to the opposite conclusion, but only one . . . has articulated a reason for its conclusion. . . . Upon consideration, the Court adopts the [*Owner–Operator Independent Drivers Association, Inc. v. Swift Transportation Co.*, 288 F. Supp. 2d 1033, 1035–36 (D. Ariz. 2003)] standard because it better effectuates the FAA's goals. *Swift 's* reasoning not only furthers the complementary policies of favoring arbitration and narrowly construing the FAA's exceptions, but also provides a sound methodology, having the non-moving party prove the FAA does not apply, for determining whether an agreement qualifies as a contract of employment.

2006 WL 5003366, *7–10.  A clause that designates a contracting party as an independent contractor cannot alone transform an employee to an independent contractor.  *Rutherfood Food Corp. v. McComb*, 331 U.S. 722, 729 (1947) ('[P]utting on an independent contractor label does not take the worker from the protection of the [FLSA].").  But each agreement contains terms consistent with the characteristics of an independent contractor.  Whether a worker is an independent contractor or an employee depends on:

> the hiring party's right to control the manner and means by which the product is accomplished[;] . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992).  *See also Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311–1312 (11th Cir. 2013).[2]

The agreements state that the plaintiffs (1) can determine the method, means, and manner in which they perform their work and are under no obligation to use the agent's products, equipment, or services; (2) can refuse shipments and refuse to accept loads tendered by an agent; (3) can vacation at will and self-schedule; (4) can supply necessary equipment and labor, including hiring employees to assist in satisfying contractual obligations; (5) can cover their own operating and maintenance expenses; and (6) can retain the option of hauling for competitors providing they remove agent identifying information from the trucks.  (Doc. 47 at 3–4, 12)  The plaintiffs' allegations (Doc. 19) that the defendant UniGroup (1) controls the hiring of van operators, (2) imposes accident policies on van operators, (3) imposes "strict [safety] policies" on drivers, (4) controls the "manner" of work (by means of GPS logging, "by maintaining the right to punish . . . through fines and suspensions," and

---

[2] "[E]mployees are those who as a matter of economic reality are dependent upon the business to which they render service." *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961). *Scantland* examines six factors that "guide" the "economic reality inquiry":

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship;
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1312.

by keeping records of payments), and (5) controls pay and day-to-day operations are not determinative of an employee relationship.

Because federal law strongly favors arbitration and because the agreements reserve to the plaintiffs the discretion that is characteristic of a contractor, the plaintiffs fail to meet their burden of establishing that they are Section 1 exempt employees. The FAA applies.

**Enforcement by a Non-Party**

The plaintiffs argue that the defendants cannot compel arbitration because the defendants are not parties to the agreements. But a non-party can compel arbitration "if the relevant state contract law allows him to enforce the [arbitration] agreement." *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011). State law controls whether a non-party's use of an arbitration clause in a contract to force a signatory to arbitrate a dispute between the non-party and the signatory. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1354 (11th Cir. 2017).

Florida law governs Jack Judge's and Dominic Oliveira's agreements (Docs. 47-3 at 14, 47-4 at 14); Ohio law governs Oliveira's and John Coffman's agreements (Docs. 47-5 at 14, 47-7 at 14); Virginia law governs Coffman's agreement (Doc. 47-6 at 14) (Oliveira and Coffman signed agreements with two separate agents); and New Jersey law governs David E. Lesperance's agreement. (Doc. 47-8 at 14)

**Florida**

To compel arbitration under Florida law, "the [non-party] must show both that [the signatory] relies on the agreement to assert [its] claims against [the non-party] and that the scope of the arbitration clause covers the dispute." *Kroma Makeup EU, LLC*, 845 F.3d at 1354; *see also Allscripts Healthcare Sols., Inc. v. Pain Clinic of Nw. Fla., Inc.*, 158 So. 3d 644, 646 (Fla. 3d DCA 2014) (Logue, J.) ("[T]he signatory . . . must rely on the terms of the written agreement in asserting its claims against the nonsignatory."). A non-party may enforce an arbitration agreement if a plaintiff's allegation is "intimately founded in and intertwined with the underlying contract obligations." *McBro Planning & Dev. Co. v. Triangle Elec. Const.* Co., 741 F.2d 342, 344 (11th Cir. 1984); *see also Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (per curiam); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999).

The arbitration clause covers "any and all disputes arising out of the agreements." Judge and Oliveira's allegations that they were employees and thus entitled to relief under the FLSA are "intimately founded in and intertwined" with the agreements that classify them as independent contractors; the plaintiffs' argument that they are owed minimum wages under the FLSA depends on whether the plaintiffs were mischaracterized as independent contractors. The plaintiffs' FLSA claims "aris[e] [from]" or "relat[e] [to]" the agreement. (Docs. 47-3, 47-4, 47-5, 47-6,

47-7, 47-8, ¶ 24(a))  The defendants can compel arbitration of the agreements governed under Florida law.[3]

### Ohio

Ohio law holds that "a signatory to a contract may enforce an arbitration provision against a nonsignatory seeking a declaration of the signatories' rights and obligations under the contract."  *Gerig v. Kahn*, 769 N.E.2d 381, 385 (Ohio 2002). But the Ohio appellate courts offer scant guidance on whether Ohio law permits a non-party to enforce an arbitration agreement.[4]

The plaintiffs argue that the defendants must rely on general common law principles of estoppel because of the Ohio Supreme Court's failure to "examin[e]

---

[3] Citing *Kroma* as an example, the plaintiff states that "the 11th Circuit [has] confusingly cited pre-*Arthur Anderson* cases without acknowledging that the state courts incorrectly believed they were bound to a federal arbitration common law." (Doc. 51 at 6–7) However, Eleventh Circuit precedent binds this order; *Kroma* and *Escobal* clearly stand for the proposition that in these circumstances the defendants may compel the plaintiffs to arbitrate.

[4] A non-party can enforce an arbitration agreement only in "rare circumstances":

> several circuits recognize an alternate estoppel theory, where arbitration may be compelled by a nonsignatory against a signatory . . . . This alternate estoppel theory has been limited to situations where a nonsignatory tries to bind a signatory to arbitration, not the reverse, i.e., where a signatory tries to bind a nonsignatory. . . . This case presents a situation in which nonsignatories are seeking to compel arbitration against a signatory. Arbitration agreements apply to nonsignatories only in rare circumstances.

*I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4, 8 (8th Dist. Cuyahoga County 2004). But *I-Sports* applies pre-*Arthur Anderson* federal estoppel law; *Arthur Anderson* requires the application of state law. Other Ohio authorities involving non-parties are distinguishable from this action.  *See Discovery Resources, Inc. v. Ernst & Young U.S. LLP*, 62 N.E.3d 714 (Ohio Ct. App. 9th Dist. Lorain County 2016); *Cleveland-Akron-Canton Advertising Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 922 N.E.2d 1012 (8th Dist. Cuyahoga County 2009); *Trinity Health Sys. v. MDX Corp.*, 907 N.E.2d 746 (7th Dist. Jefferson County 2009).

whether there is a special law of equitable estoppel for non-signatories to compel arbitration." (Doc. 51 at 4–6)  Estoppel requires detrimental reliance.  *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St. 3d 143, 145–46 (Ohio 1990); *Doe v. Blue Cross / Blue Shield of Ohio*, 79 Ohio App. 3d 369, 607 N.E.2d 492 (10th Dist. Franklin County 1992) (holding that reliance is "a necessary element of estoppel").  The defendants advance neither fact nor law establishing detrimental reliance.  The defendants cannot compel arbitration of the agreements governed under Ohio law.

### New Jersey

New Jersey law disfavors estoppel.  "Equitable estoppel is more properly viewed as a shield to prevent injustice rather than a sword to compel arbitration." *Hirsch v. Amper Financial Services, LLC.*, 71 A. 3d 849, 852 (N.J. 2013).  To establish estoppel, a party moving to compel arbitration must show that the opposing party "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [they] acted or changed their position to their detriment."  *Knorr v. Smeal*, 836 A.2d 794 799 (N.J. 2003) (Albin, J.).

New Jersey law rejects "intertwinement as a theory for compelling arbitration when its application is untethered to a written arbitration clause between the parties, evidence of detrimental reliance, or at a minimum an oral agreement to submit to arbitration. . . .  Estoppel cannot be applied solely because the parties and claims are intertwined . . . ." *Hirsch*, 71 A. 3d at 859–860.  The defendants cannot compel

arbitration under New Jersey law because the defendants present neither fact nor law establishing detrimental reliance.

### Virginia

A review of Virginia appellate authorities reveals no authority applying estoppel in the context of a non-party's compelling a signatory to arbitrate. The plaintiffs argue that in the absence of contrary authority the defendants must rely instead on general common law principles of estoppel. (Doc. 51 at 6) A party advancing an estoppel argument must allege reliance on an action or statement of the party he attempts to bind. *Tuomala v. Regent University*, 252 Va. 368, 376 (Va. 1996). The defendants cannot compel arbitration under Virginia law because the defendants present neither fact nor law establishing detrimental reliance.

### Waiving Arbitration

A party's conduct can waive the right to compel arbitration. *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990). A party waives the right to compel arbitration if he acts inconsistently with the right and if the inconsistent acts prejudice the other party. *Ivax Corp.*, 286 F.3d at 1315–16. A party acts inconsistently with the arbitration right if the party "substantially invokes the litigation machinery prior to demanding arbitration." *Ivax Corp.*, 286 F.3d at 1315. To determine prejudice, "we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *S & H Contractors*, 906 F.2d at 1514. A party suffers prejudice if the

- 11 -

party opposing arbitration "undergo[es] the types of litigation expenses that arbitration was designed to alleviate." *Johnson v. Keybank Nat'l Ass'n*, 754 F.3d 1290, 1294 (11th Cir. 2014). Also, the right to arbitration is not automatically waived by submitting a Rule 12(b)(6) motion. *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011). The plaintiffs assert unconvincingly that they "expended significant resources and time" opposing the defendants' motions and that they suffered substantial prejudice because of the defendants' failure to move to compel arbitration at an earlier point in the litigation. (Doc. 51 at 20) The defendants moved to dismiss three times before moving to compel arbitration. On the first occasion they moved to dismiss contemporaneously with the motion to transfer. Following an amended complaint, the defendants again moved to dismiss contemporaneously with the motion to transfer. The defendants renewed their motion to dismiss following transfer. The second and third motions to dismiss are almost identical and total no more than a dozen pages (excluding the venue analysis). When moving to compel arbitration the parties had engaged in no discovery. (Doc. 47 at 16) The plaintiffs fail to establish that the defendants acted inconsistently with their right to compel arbitration and that the purported inconsistent acts prejudiced the plaintiffs.

## Rule 12(b)(6)

The defendants argue that the complaint "fail[s] to state the amount of wages [paid], do[es] not specify the amount of deductions . . . [and fails] to point to any

other facts which could permit the Court to do the math necessary to determine if Plaintiffs' claims are viable." (Doc. 43 at 1)  A complaint must plead "sufficient" factual matter to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint need state "only enough detail to give the defendant fair notice of . . . the claim . . . and the grounds upon it rests." *Reger Development LLC v. National City bank*, 582 F.3d 759, 764 (7th Cir. 2010).  To state a claim for a FLSA violation, a plaintiff must plead a failure to pay minimum wages to covered employees; there is "no need to prove intent or causation that might require more extensive pleading." *Labor v. Labbe*, 319 Fed. App'x 761, 763 (11th Cir. Nov. 4, 2008) (per curiam).

The plaintiffs need not plead the value of paid wages or the exact amount of deductions.  The plaintiffs allege that the defendants violated the FLSA by paying less than the minimum wage. (Doc. 19 at 3)  The amended complaint, which identifies the weeks during which the defendants allegedly paid less than the minimum wage, states a claim under the FLSA.

## CONCLUSION

The defendants' motion (Doc. 43) to dismiss is **DENIED** and the defendants' motion (Doc. 47) to compel arbitration is **GRANTED IN PART**.  Under 9 U.S.C. § 3, the parties must individually arbitrate (1) Judge's claims and (2) Oliveira's claims that arise from the ICOA (Doc. 47-4) between Oliveira and Fister Moving and Storage, Inc.  Judge's claims and Oliveira's claims that arise

from the agreement between Oliveira and Fister Moving are **STAYED** pending arbitration.  Within a week after the parties receive the arbitral decision, the plaintiff must move to re-open the claims and to lift the stay.  If the parties have not received the arbitral decision by **MARCH 9, 2018**, on that day the plaintiff must submit a report detailing the status of the arbitration.

ORDERED in Tampa, Florida, on September 8, 2017.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE