## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| JACK JUDGE, DOMINIC OLIVEIRA, JOHN COFFMAN, and DAVID LESPERANCE, individually and on behalf of those similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>UNIGROUP, INC., MAYFLOWER TRANSIT, LLC., and UNITED VAN LINES, LLC.,<br><br>    Defendants. | Civil Action No. 8:17-cv-00201-SDM-TBM<br><br>Judge: Steven D. Merryday<br><br>Magistrate Judge: Christopher P. Tuite |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION OF OPT-IN PLAINTIFFS' CLAIMS AND INCORPORATED MEMORANDUM OF LAW

Defendants UniGroup, Inc., Mayflower Transit, LLC, and United Van Lines, LLC (collectively, "Defendants"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), and the Missouri Uniform Arbitration Act, MO. REV. STAT. § 435.350, *et seq.* ("MUAA"*)*, respectfully move this Court to enter an order staying all proceedings and enforcing the arbitration agreements entered into by Opt-In Plaintiffs Joe Lotts, Jerry Taylor, and John Mumby. For the reasons set forth below, Defendants' motion should be granted.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

On September 8, 2017, this Court entered an Order granting in part Defendants' motion to compel arbitration of Plaintiffs' claims arising under the Fair Labor Standards Act ("FLSA"). (ECF No. 62.) The Court concluded that Plaintiffs Jack Judge and Dominic Oliveira must individually arbitrate their claims arising from the Independent Contractor Operating Agreement

("ICOA") they entered with Defendant's Agent pursuant to 9 U.S.C. § 3. In so ruling, the Court made the following conclusions of law and findings of fact:

- Plaintiffs' FLSA claims arise out of and relate to the ICOAs;

- The arbitration clauses and class waivers are enforceable;

- Plaintiffs are not exempt from Section 1 of the FAA because the ICOAs contain terms consistent with the characteristics of an independent contractor agreement; and

- Defendants can enforce the arbitration clauses of the ICOAs if "the relevant state contract law allows [them] to enforce the arbitration agreement." (*See* ECF No. 62 at 7 (quoting *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1171 (11th Cir. 2011)).

On March 7, 2018, Joe Lotts, Jerry Taylor, and John Mumby (the "Opt-In Plaintiffs") filed notices of consent to join this action. (ECF Nos. 78, 79, and 80.) Like the claims of Judge and Oliveira, these new Opt-In Plaintiffs must individually arbitrate their claims because they entered enforceable arbitration agreements that encompass their FLSA claims, they are not exempt from the FAA,[1] and Defendants can enforce their arbitration agreements pursuant to the relevant state contract law governing the agreements.

## II.  RELEVANT FACTS

Defendants are licensed interstate household goods motor carriers pursuant to the Federal Motor Carrier Act. (David Pile Decl., attached as Exhibit 1, ¶ 3.) As part of their operations, Defendants enter Agency agreements with independently-owned moving companies across the country. (*Id.*) These independent household goods moving companies are separate, privately-held corporations and have not been named as defendants in this action. (*Id.*) Through agency

---

[1]  Even if Defendants cannot enforce the arbitration agreements pursuant to the FAA, they can under the MUAA because the Opt-In Plaintiffs agreed that if the FAA is inapplicable, Missouri's arbitration laws would instead govern their claims.

agreements, these independent moving companies—called Agents—are able to use Defendants' federal motor carrier operating authority to transport goods in interstate commerce. (*Id.*)

The Agents, in turn, engage owner-operators truck drivers (such as the Opt-In Plaintiffs) to provide moving services, including but not limited to the transportation of goods under Defendants' federal motor carrier operating authority. (*Id.* at ¶ 4.) Each Opt-In Plaintiff signed an ICOA with an Agent detailing the terms of the relationship between the Opt-In Plaintiff and Agent. (*Id.* at ¶¶ 9-18.) Although the various versions of the ICOA signed by each Opt-In Plaintiff and their respective Agent are slightly different, all unequivocally state that each Opt-In Plaintiff "is an independent contractor" and "not an employee" of the Agent.[2] The ICOAs also state in no uncertain terms that the Opt-In Plaintiffs:

1)      Were solely responsible for determining the method, means and manner of performing work under the ICOA;[3]

2)      Were not required to purchase or rent any products, equipment, or services from the Agent;[4]

3)      Had minimal obligation to accept any loads tendered by Agents and could refuse shipments;[5]

4)      Could take weeks off from accepting loads at their discretion and otherwise self-determine their schedules and workloads;[6]

5)      Were solely responsible for providing the equipment (other than certain trailers, communication and in-van equipment) necessary to perform all work under the ICOA;[7]

6)      Were solely responsible for providing the labor necessary to perform all work under the ICOA;[8]

7)      Had the ability to hire employees to assist them in performing work under the ICOA;[9]

---

[2]   Pile Decl. Ex. B at 3; Pile Decl. Ex. C at 4; Pile Decl. Ex. D at 8 (citing to ECF page no.); Pile Decl. Ex. E at 3.
[3]   Pile Decl. Ex. B at 4; Pile Decl. Ex. C at 4; Pile Decl. Ex. D at 9 (citing to ECF page no.); Pile Decl. Ex. E at 4.
[4]   Pile Decl. Ex. B at 1; Pile Decl. Ex. C at 1; Pile Decl. Ex. D at 6 (citing to ECF page no.); Pile Decl. Ex. E at 1.
[5]   Pile Decl. Ex. B at 1; Pile Decl. Ex. C at 1; Pile Decl. Ex. D at 6 (citing to ECF page no.); Pile Decl. Ex. E at 1.
[6]   Pile Decl. Ex. B at 1; Pile Decl. Ex. C at 1; Pile Decl. Ex. D at 6 (citing to ECF page no.); Pile Decl. Ex. E at 1.
[7]   Pile Decl. Ex. B at 1; Pile Decl. Ex. C at 1; Pile Decl. Ex. D at 6 (citing to ECF page no.); Pile Decl. Ex. E at 1.
[8]   Pile Decl. Ex. B at 3; Pile Decl. Ex. C at 4; Pile Decl. Ex. D at 7 (citing to ECF page no.); Pile Decl. Ex. E at 3.
[9]   Pile Decl. Ex. B at 3; Pile Decl. Ex. C at 4; Pile Decl. Ex. D at 7 (citing to ECF page no.); Pile Decl. Ex. E at 3.

8)      Had no obligation to purchase fuel or anything else from Agent[10];

9)      Were solely responsible for paying their own operating and maintenance expenses;[11] and

10)     Were entitled to haul for other carriers as long as they removed any Agent indicia from their trucks.[12]

As such, the Opt-In Plaintiffs were properly classified by the Agents as independent contractors. Despite the clear terms of the ICOA, the Opt-In Plaintiffs now allege that they were employees of Defendants covered by the Fair Labor Standards Act and were not paid the statutory minimum wage for the work they performed pursuant to the ICOAs.

        In their respective ICOAs, each Opt-In Plaintiff agreed to arbitrate "[a]ny dispute (including a request for preliminary relief) arising in connection with or relating to this Agreement."[13]  The arbitration agreements further state the parties agreed that any dispute relating to the agreements' "terms, or its implementation, including any allegation of tort or of breach of this Agreement or of violations of the requirements of any applicable government authorities … shall be fully and finally resolved by arbitration in accordance with the Commercial Arbitration Rules of the AAA, the FAA, or, if the FAA is held not to apply, the arbitration laws of the State of Missouri.." (*Id.*) The arbitration agreements prohibit "consolidated or class arbitrations." (*Id.*)

        Plaintiff Lotts entered an ICOA governed by Florida law. Plaintiff Mumby entered an ICOA governed by Michigan law. Plaintiff Taylor entered ICOAs governed by Arkansas and Oklahoma law. [14]

---

[10] Pile Decl. Ex. B at 5; Pile Decl. Ex. C at 6; Pile Decl. Ex. D at 9 (citing to ECF page no.); Pile Decl. Ex. E at 5.
[11] Pile Decl. Ex. B at 5; Pile Decl. Ex. C at 6; Pile Decl. Ex. D at 9 (citing to ECF page no.); Pile Decl. Ex. E at 5.
[12] Pile Decl. Ex. B at 1-2; Pile Decl. Ex. C at 1-2; Pile Decl. Ex. D at 5-6 (citing to ECF page no.); Pile Decl. Ex. E at 1-2.
[13] Pile Decl. Ex. B at 10; Pile Decl. Ex. C at 10; Pile Decl. Ex. D at 14 (citing to ECF page no.); Pile Decl. Ex. E at 10.
[14] Pile Decl. Ex. B at 10; Pile Decl. Ex. C at 10; Pile Decl. Ex. D at 14 (citing to ECF page no.); Pile Decl. Ex. E at 10.

## III.  ARGUMENT AND LEGAL AUTHORITY

### A.    The FAA and MUAA Require Bilateral Arbitration of the Opt-In Plaintiffs' Claims.

As this Court previously observed, "[t]he FAA codifies a 'strong federal preference for arbitration of disputes." (ECF No. 62 at 2 (quoting *Musnick v. King Motor Co.*, 325 F.3d 1255, 1258 (11th Cir. 2003)). The ICOAs into which the Opt-In Plaintiffs entered with Defendants' Agents contain an identical clause that requires arbitration of any dispute "arising in connection with or relating to this Agreement, its terms, or its implementation," which includes the Opt-In Plaintiffs' FLSA claims. "The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1197 (11th Cir. 2008) (internal quotation and citation omitted). None of the ICOAs at issue here exclude any category of claims from the mandatory arbitration provision and therefore encompass the Opt-In Plaintiffs' claims that they were not properly paid for the work they performed under the ICOAs. (ECF No. 62 at 3.) The Opt-In Plaintiffs further agreed not to arbitrate their claims on a class or collective basis, which is enforceable under the FAA. *Id.* (citing *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 126, 1334 (11th Cir. 2014)).

Even if the Court were to hold that the Opt-In Plaintiffs' agreements to arbitrate are unenforceable under the FAA, Defendants may still enforce the agreements pursuant to the MUAA, which states that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract, except contracts of insurance and contracts of adhesion, to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." MO. REV. STAT. § 435.350.  Each Opt-In Plaintiff agreed that if the

FAA is inapplicable, Missouri's arbitration laws would instead govern his claims. (Pile Decl. Ex. B at 11; Pile Decl. Ex. C at 11; Pile Decl. Ex. D at 20; Pile Decl. Ex. E at 11.) The MUAA does not exempt transportation workers from its enforcement provisions. Further, the MUAA allows parties to waive the right to proceed in arbitration on a class or collective basis. *See, e.g.*, *Manfredi v. Blue Cross & Blue Shield of Kansas City*, 340 S.W.3d 126, 139 n.2 (Mo. Ct. App. 2011) (collecting cases). Accordingly, the Opt-In Plaintiffs' claims must be compelled to bilateral arbitration under the MUAA even if the Court determines that the FAA does not apply to the Opt-In Plaintiffs.

The Opt-In Plaintiffs likely will argue that the arbitration agreements are unconscionable under the MUAA because the ICOAs are contracts of adhesion under Missouri law. (ECF No. 51 at 17.) The test for a contract of adhesion under Missouri law is whether the provisions are unexpected, unfair, and fail to comport with the reasonable expectations of a weaker party, measured objectively according to the average member who would accept such a contract. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 857 (Mo. 2006). Defendants anticipate that the Opt-In Plaintiffs may submit self-serving declarations stating that they did not know they could negotiate the ICOAs in an attempt to portray themselves as having no bargaining power against the Agents. Regardless of their current characterization of the relationship, the Opt-In Plaintiffs are not an objectively "weak party" under Missouri law and cannot show that an average owner-operator would have rejected an arbitration agreement. To the contrary, the Opt-In Plaintiffs are in-demand service providers in a market where businesses are desperately competing for driving services. *See Critical Issues in the Trucking Industry - 2017*, AM. TRANSP. INST. (2017), *available at* http://atri-online.org/wp-content/uploads/2017/10/ATRI-Top-Industry-Issues-2017.pdf (listing driver shortage as the top concern of the year and "a perennial top industry

issue"). The Opt-In Plaintiffs are further members of an established trade of entrepreneurs that has a long history in American transportation and permits owner-operators to be compensated at a high rate for accepting the operational costs of "running businesses on wheels." *See* Douglas C. Grawe, *Have Truck, Will Drive: The Trucking Industry and the Use of Independent Owner-Operators Over Time*, 35 TRANSP. L.J. 115 (2008), *available at* http://www.law.du.edu/ documents/transportation-law-journal/v35-n02-grawe.pdf. The Opt-In Plaintiffs' participation in this trade is evidenced by the ICOAs into which they entered and which display the hallmarks of the independence afforded to drivers in the owner-operator trade. Accordingly, even if they allege that they did not negotiate or know that they could negotiate the arbitration agreement, the Opt-In Plaintiffs will be unable to meet their burden of demonstrating that the arbitration provisions in their ICOAs were objectively unreasonable.

### B.      Plaintiffs Are Not Exempt from the FAA.

The Opt-In Plaintiffs likely will re-raise the arguments of the named Plaintiffs that they are exempt from the FAA pursuant to Section 1 of the FAA, which exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This Court previously rejected such arguments because the ICOAs plainly establish that the Opt-In Plaintiffs are independent contractors and not employees. (ECF No. 62 at 5-7.) The Court further held that federal law strongly favors arbitration, that Plaintiffs have the burden of establishing that they are exempt from Section 1 of the FAA, and that Plaintiffs failed to meet that burden. *Id.* (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 106 (2001) (holding that the Section 1 exemption is narrowly construed)). Here, too, the Opt-In Plaintiffs will be unable to meet their burden of establishing that they are exempt from the FAA.

The ICOAs themselves state that the Opt-In Plaintiffs: (1) can determine the method, means, and manner in which they perform their work and are under no obligation to use the Agent's products, equipment, or services; (2) can refuse shipments and refuse to accept loads tendered by an Agent; (3) can vacation at will and self-schedule; (4) can supply necessary equipment and labor, including hiring employees to assist in satisfying contractual obligations; (5) can cover their own operating and maintenance expenses; and (6) can retain the option of hauling trucks for competitors providing they remove Agent identifying information.[15] (*See* ECF No. 62 at 6, concluding same for the named Plaintiffs.)  As such, they are not employees as a matter of economic reality. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013) (noting the six factors that guide the economic reality inquiry). Plaintiffs' allegations that Defendant UniGroup, Inc. controls the hiring of van operators like the Opt-In Plaintiffs, imposes accident and safety policies on them, maintains records of payments, and punishes them through fines and suspensions "are not determinative of an employee relationship." (ECF No. 62 at 7.)

Finally, as this Court noted, there is a split of authority regarding "the meaning of 'contract of employment' in the context of owner-operators." (*Id.* at 4 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. United Van Lines, LLC*, 06-cv-219, 2006 WL 5003366 (E.D. Mo. Nov. 15, 2006). This Court previously opted to follow the line of cases holding that the characterization of the relationship described in the agreement controls unless the non-moving party can meet its burden of proving that the FAA does not apply. The Court's holding is the law of the case and should be followed here. *Abromats v. Abromats*, No. 16-CV-60653, 2016 WL 5941888, at *2 (S.D. Fla. Oct. 13, 2016) (quoting *Fontainebleau Hotel Corp. v. Crossman*, 286 F.2d 926, 928 (5th Cir. 1961) ("The rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the

---

[15] *See supra* pp. 3-4 for supporting citations.

matter."). Since this Court's September 8, 2017 Order, another federal court reached the same conclusion when considering a similar ICOA involving claims against one of the same Defendants and held that a van operator plaintiff was not exempt from the FAA and must arbitrate his FLSA claims against Defendant United Van Lines, LLC. *Dennis v. United Van Lines, LLC*, No. 4:17CV1614 RLW, 2017 WL 5054709, at *5 (E.D. Mo. Nov. 1, 2017) (noting, as this Court did, that this standard "better effectuates the goals of the FAA by furthering the policies of favoring arbitration and narrowly construing the FAA's exceptions and also providing a sound methodology"). Defendants respectfully ask the Court to follow its previous holding and find that the terms of the ICOA clearly establish that the Opt-In Plaintiffs were independent contractors and not employees.[16]

### C.   Defendants Have Standing to Enforce the Opt-In Plaintiffs' Arbitration Agreements Pursuant to Relevant State Contract Law.

Even though Defendants are not signatories to the Opt-In Plaintiffs' ICOAs, it is law of the case that they can enforce the arbitration agreements if the relevant state contract law governing the agreements allows enforcement by non-signatories. Defendants can enforce the arbitration agreements signed by the Opt-In Plaintiffs because they are governed by Florida, Michigan, Arkansas, and Oklahoma law, all of which allow non-signatories to enforce agreements where (as here) the claims are sufficiently intertwined with the or rely upon the agreement. Just as with the claims of Judge and Oliveira, the Opt-In Plaintiffs' claims are

---

[16] Defendants acknowledge that since this Court's Order, the U.S. Supreme Court granted certiorari on the issues of: (1) whether a dispute over the applicability of the FAA Section 1 exemption is an arbitrability issue that must be resolved in arbitration pursuant to a valid delegation clause; and (2) whether the FAA Section 1 exemption applies only to contracts of employment such that it is inapplicable to independent contractor agreements. *New Prime, Inc. v. Oliveira*, Docket No. 17-340. Plaintiffs may request that Court stay its decision to compel arbitration until the Supreme Court rules on this issue. The Supreme Court is scheduled to hear the case during the 2018 term beginning in October, with a decision not expected until after the trial in this matter. Such a request would unduly delay the resolution of this matter, which has already been pending for 20 months. Defendants respectfully request that the Court decide this issue consistent with its holding in the September 8, 2017 Order.

intimately founded in, intertwined with, and dependent upon the ICOAs; thus, the Opt-In Plaintiffs are equitably estopped from avoiding arbitration of their FLSA claims.

### 1.    Florida Law

Opt-In Plaintiff Lotts' ICOA, like the ICOA signed by Plaintiffs Judge and Oliveira, is governed by Florida law. It is the law of the case that under Florida law, Defendants can enforce the arbitration clause in the ICOAs. (ECF No. 62 at 8-9.) Under Florida law, a non-party may enforce an arbitration agreement if a plaintiff's allegation is "intimately founded in and intertwined with the underlying contract obligations." *McBro Planning & Dev. Co. v. Triangle Elec. Const. Co.,* 741 F.2d 342, 344 (11th Cir. 1984); *see also Escobal v. Celebration Cruise Operator, Inc*., 482 Fed.Appx. 475, 476 (11th Cir. 2012) (per curiam); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999). The arbitration clause covers "any and all disputes arising out of the agreement." Opt-In Plaintiff Lotts' allegations that he was an employee and thus entitled to relief under the FLSA is "intimately founded in and intertwined" with the ICOA. Consistent with this Court's September 8, 2017 Order, Defendants can thus compel arbitration of the agreements governed under Florida law.

### 2.    Michigan Law

Opt-In Plaintiff Mumby's ICOA is governed by Michigan law. Under Michigan law, a non-signatory may enforce an arbitration agreement if the claims are "so intertwined with the agreement containing the arbitration clause that it would be unfair to allow the signatory to rely on the agreement in formulating its claims but to disavow the availability of the arbitration clause of that same agreement." *Tobel v. AXA Equitable Life Ins. Co*., No. 298129, 2012 WL 555801, at *9-12 (Mich. Ct. App. Feb.21, 2012); *see also Thomas v. Right Choice Staffing Grp., LLC*, No. CIV. 15-10055, 2015 WL 4078173, at *5 (E.D. Mich. July 6, 2015) (granting non-

signatory defendant's motion to compel arbitration of FLSA claims pursuant to independent

contractor agreement); *Southerland v. Corporate Transit of Am*., No. 13–14462, 2014 WL

4906891, at \*1, \*5 (E.D. Mich. Sept. 30, 2014) (holding that the owner-operator plaintiff's

claims that he was misclassified as an independent contractor were intertwined with the owner-

operator agreement and non-signatory defendant could compel arbitration of plaintiff's claims).

Mumby's allegations that he was an employee and therefore entitled to relief under the FLSA

(and not an independent contractor  who is not entitled to relief under the FLSA) are intimately

founded upon and intertwined with the agreements that classified them as independent

contractors. Thus, Defendants can enforce the arbitration agreement signed by Opt-In Plaintiff

Mumby pursuant to Michigan law.

### 3.      Arkansas Law

One of the ICOAs signed by Opt-In Plaintiff Taylor is governed by Arkansas law. Under

Arkansas law, a non-signatory may enforce an arbitration agreement "when a signatory to a

written agreement containing an arbitration clause must rely on the written agreement in

asserting claims against the non-signatory." *Bigge Crane & Rigging Co. v. Entergy Arkansas,

Inc*., 457 S.W.3d 265, 273 (Ark. 2015); *Am. Ins. Co. v. Cazort*, 871 S.W.2d 575, 579-80 (Ark.

1994) ("In short, [plaintiff] cannot have it both ways. It cannot rely on the contract when it works

to its advantage and ignore it when it works to its disadvantage."). Opt-In Plaintiff Taylor must

rely upon the terms of the terms of the ICOA to assert his claims against Defendants; indeed, the

ICOA is what authorized Taylor to perform interstate household goods moving services pursuant

to Defendants' federal motor carrier operating authority. The ICOA governs the moving services

that Taylor provided, and Taylor's claims depend on the existence of the ICOA. Without the

ICOA, Taylor would have no claim to remuneration for performing moving services, he could

have performed no work under Defendants' federal motor carrier operating authority, and the parties would have no relationship whatsoever. Accordingly, Defendants can enforce Opt-In Plaintiff Taylor's claims pursuant to Arkansas law. *See also Westbrook v. JAG Indus. Servs., Inc.*, No. 3:14-CV-2080-M, 2015 WL 93447, at *3 (N.D. Tex. Jan. 7, 2015) (applying the "rely upon" theory of equitable estoppel and holding that a non-signatory employer could enforce an arbitration agreement with respect to employee's FLSA claims).

### 4.    Oklahoma Law

Opt-In Plaintiff Taylor's other ICOA is governed by Oklahoma law. Under Oklahoma law, a non-signatory may enforce an arbitration agreement "when the claims are integrally related to the contract containing the arbitration clause." *B.A.P., L.L.P. v. Pearman,* 250 P.3d 332, 339 (Okla. Ct. App. 2011) (compelling arbitration upon motion of non-signatory). Oklahoma courts further recognize the federal substantive law on the doctrine of equitable estoppel. *Id.* at 339-40 ("[G]iven the scarcity of authority on the issue in Oklahoma law, and the similarities between federal and Oklahoma arbitration law as it relates to this issue, we find opinions from the federal circuit courts on this issue are also instructive."). Under federal substantive law, including Eleventh Circuit precedent, Defendants can enforce an arbitration agreement where the Plaintiffs' allegations are "intimately found in and intertwined with the underlying contract obligations." *See, e.g.*, *Escobal*, 482 F. Appx. at 476. Like the claims of Plaintiffs' Oliveira and Judge, Plaintiff Taylor's claims that he was misclassified as an independent contractor are intimately found in intertwined with the agreement classifying him as such, and Defendants can enforce Opt-In Plaintiff Taylor's claims pursuant to Oklahoma law.

### V. CONCLUSION

The Court should stay the Opt-In Plaintiffs' claims and compel the Opt-In Plaintiffs to individually arbitrate their claims as required under their respective ICOAs.

## <u>Local Rule 3.01(g) Certification</u>

Defendants' counsel conferred with Plaintiffs' counsel in a good-faith effort to resolve the issues raised by this motion. Plaintiffs' counsel stated that he opposes the relief sought by this motion.

Date:  March 30, 2018                                        Respectfully submitted,

<u>*/s Kyle Anne Petersen*</u>
Dennis M. McClelland
Florida Bar No. 0091758
dennis.mcclelland@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
Phone: (813) 472-7550
Fax: (813) 472-7570

and

Noah A. Finkel (pro hac vice admission)
nfinkel@seyfarth.com
Kyle Petersen (pro hac vice admission)
kpetersen@seyfarth.com
Cheryl A. Luce (pro hac vice admission)
cluce@seyfarth.com
Seyfarth Shaw LLP
233 S. Wacker Drive
Suite 8000
Chicago, Illinois 60603
Phone: (312) 460-5000
Fax: (312) 460-7000

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 30, 2018, I electronically filed the foregoing document with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to

all counsel of record.

/s/ *Cheryl A. Luce*_____
Attorney