UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JOHN COFFMAN, and DAVID LESPERANCE, individually and on behalf of those similarly situated,<br><br>**Plaintiffs,**<br>v.<br><br>UNIGROUP, INC., MAYFLOWER TRANSIT, LLC., and UNITED VAN LINES, LLC.,<br><br>**Defendants.** | Civil Action No. 8:17-cv-00201 |

### *REVISED* JOINT MOTION FOR APPROVAL OF <u>FLSA SETTLEMENT AGREEMENT</u>

Plaintiffs, John Coffman and David Lesperance (collectively "Plaintiffs") and Defendants UniGroup,C.A. f/k/a UniGroup, Inc., Mayflower Transit, LLC, and United Van Lines, LLC ("Defendants"), (Plaintiffs and Defendants collectively the "Settling Parties"), pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), jointly move for Court approval of the their attached FLSA settlement agreement. In accordance with the Court's Order denying the Parties' prior Joint Motion for Approval (*see* Doc. 156), the Parties omitted the non-publicity clause from the prior version. In further support hereof, the Settling Parties state as follows:

### *Supporting Facts*

1. This FLSA minimum wage case was heavily litigated in multiple jurisdictions for well over three years, at first in the Northern District of Illinois and then in the Middle District of Florida.

2. Named Plaintiffs Jack Judge, Dominic Oliveira, John Coffman, and David Lesperance originally filed this instant action on June 30, 2016 in the Northern District of Illinois alleging violation of the Fair Labor Standards Act's (the "FLSA") minimum wage provision. (Doc. 1).

3. After several rounds of briefing before the Northern District of Illinois, Defendants sought and ultimately secured a transfer to the United States District Court, Middle District of Florida, Tampa Division, on January 26, 2017. (*See* Docs. 13, 14, 22, 23, 25, 27, 29).

4. The operative Complaint alleges that Defendants failed to pay Plaintiffs minimum wage under the FLSA. Defendants have at all times denied Plaintiffs' allegations, and also denied having ever employed Plaintiffs. (Docs. 19, 76).

5. Opt-In Plaintiffs Joe Lotts, Jerry Taylor, and John Mumby filed consent-to-join forms on March 7, 2018. (Docs. 78, 79, 80). Defendants filed multiple motions to compel arbitration as to all claims in this case. (Docs. 47, 82). The Court ultimately ordered the claims of Jack Judge, Dominic Oliveira, Joe Lotts, and John Mumby to arbitration. (Docs. 62, 97). The Parties later resolved the claims of all Plaintiffs (*see* Doc. 123), except for Coffman and Lesperance.

6. Discovery in this case was extensive. Both sides conducted multiple depositions (including as to both parties and non-party witnesses), exchanged thousands of pages of documents, and obtained documents from third-parties both in this case and in the arbitration proceedings.

52435760v.1

7.  As reflected by the docket, briefing in this case was also extensive. Multiple motions to dismiss were filed (Docs. 13-16, 43), briefs in opposition (Docs. 25, 45), motions to compel arbitration and memoranda in opposition (Doc. 47, 51, 82, 87), a motion to take Opt-In Plaintiff Jerry Taylor's deposition out of time, and to move for summary judgment as to Taylor (Doc. 101), brief in opposition (Doc. 102), and summary judgment as to the claims of Lesperance and Coffman to which Plaintiff made arguments related to Taylor.

8.  After the Parties resolved the claims of Joe Lotts, Jerry Taylor, John Mumby, Dominic Olivera and Jack Judge, they continued to litigate the claims of both Coffman and Lesperance as those claims were subject to a potentially dispositive motion for summary judgment filed by Defendants. The Court denied that Motion on July 27, 2019. (Doc. 144). In the interim, Counsel for Plaintiffs and Defendant met for the pretrial meeting, filed a Joint Pretrial Statement, and also filed *in limine* briefs on witnesses.

9.  It was not until a few days before the pretrial conference, set for September 10, 2019, that the Parties were finally able to resolve this matter.

10. To avoid the risks and unknowns, as well as the costs of trial, the Parties desire to fully and finally resolve this action with prejudice. Accordingly, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982), the Parties jointly move for Court approval of the attached FLSA settlement agreement.

11. After a full review of the facts and information, the Parties, who have been represented by counsel at all times, agree that the negotiated terms of the settlement represent a fair, reasonable, and just compromise of disputed issues.

3

12. Additionally, as set forth below, fees and costs were agreed upon separately and without regard to the amount paid to the Plaintiffs.

## MEMORANDUM OF LAW

There are two ways in which claims for overtime compensation under the FLSA may be compromised or released by an employee. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor. *Id*. The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354. When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval. *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

### I.     The Settlement.

The Settlement Agreement is attached hereto as Exhibit A. Under the terms of the Settlement Agreement, Defendants shall pay to Plaintiffs John Coffman $11,000 and

4

$6,500 for their claim for damages under the FLSA. Considering that the claims at issue arise only under the FLSA's minimum wage provision, and that each of the Plaintiffs was qualified by Defendants for a fairly limited time for Defendants, these amounts fairly balance the monetary amounts at issue in the case with the risks inherent in proceeding with litigation (and arbitration) rather than settling. These amounts are also consistent with sworn deposition testimony Coffman and Lesperance provided as to the time for which they did not receive at least minimum wage.

Importantly, the settlement does not require Plaintiffs to waive or release any claims other than their minimum wage claims against Defendants. Nor does it require Plaintiffs to agree to any terms, such as confidentiality, non-participation in other claims, or a prospective waiver of any rights, that this Court has previously ruled to be impermissible in the context of an FLSA settlement. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010). The parties and their counsel tried very hard to ensure this Court's preferences from *Hydrary* for FLSA settlements were carefully adhered in an effort to facilitate Court approval of their settlement. In fact, the agreement used by the Parties is nearly identical to the agreement approved by the Court (*see* Doc. 123) as to the claims of Jack Judge, Dominic Oliveira, John Mumby, Joe Lotts, and Jerry Taylor (*see* Doc. 120-1).

The settlement also provides that Defendants will pay Plaintiffs' counsel the sum total of $80,000 in fees and costs. Plaintiffs' fees and costs were negotiated separately from the amount payable to Plaintiffs under this settlement. The Parties agree that the amount allocated to Plaintiffs' counsel for attorneys' fees and costs is fair and reasonable

52435760v.1

in light of the stage of the proceedings and the work performed to date by Plaintiffs' counsel. In fact, Plaintiffs' counsel had expended considerable more in fees and costs than they are seeking to collect.

## II. A "Bona Fide" Dispute Exists.

*Lynn's Food Stores* permits approval of a compromise resolving a "bona fide dispute over FLSA provisions." *Dees*, 706 F. Supp. at 1241. Parties requesting review of an FLSA settlement must provide enough information to the Court to examine the bona fides of the dispute. *Id.*

The Settling Parties' respective positions on the merits of the case have been briefed extensively. Briefly, Plaintiffs worked as long-haul owner-operators transporting household goods and performing moving services. Plaintiffs entered into independent contractor operating agreements with separate moving companies (called Agents) that are not parties to this lawsuit. These companies have agreements with Defendants United Van Lines, LLC and Mayflower Transit, LLC (the "Van Lines") to provide transportation services under the Van Lines' motor carrier authority. The crux of this entire lawsuit is whether Defendants employed Plaintiffs and, if so, whether they violated the Fair Labor Standards Act ("FLSA") by failing to pay the Plaintiffs the minimum wage of $7.25 per hour for work Plaintiffs contend Defendants controlled as a matter of economic reality. Defendants, of course, dispute this allegation.

In short, the Settling Parties agree that a bona fide dispute exists as to whether Defendants employed Plaintiffs and, if so, violated the FLSA by failing to pay the Plaintiffs

$7.25 per hour for work Plaintiffs contend Defendants controlled as a matter of economic reality.

### III. All Factors Relevant to the "Fairness" of the Settlement Weigh in Favor of Approval.

Although *Lynn's Food Stores* determined that the settlements at issue in that case were unfair, it did not specify criteria for evaluating the fairness of proposed compromises under different circumstances. *See Dees*, 706 F. Supp. 2d at 1240. This Court has noted that the factors for evaluating the fairness of a class action settlement provide a familiar starting point, including:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel.

*Id.* at 1241 (citations omitted). Here, all factors weigh in favor of approval of the settlement.

#### a. *There is no fraud or collusion behind the settlement.*

Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to plaintiffs seemed fair. *See Bonilla v. Shiner's Car Wash*, 2014 U.S. Dist. LEXIS 66297, at * 5 (M.D. Fla. 2014). Here, each party was independently represented by counsel with substantial experience litigating FLSA claims. As evidenced by the extensive court record in this case, counsel advocated on behalf of their respective clients vigorously. There was no fraud or collusion behind the settlement.

#### b. *The complexity, expense, and length of future litigation militate in favor of the settlement.*

52435760v.1

Continuing to litigate the claims the Parties have resolved and for which the parties now seek Court approval, would require both sides to incur significant additional fees at trial. Both sides would bear some risk if the claims that have been settled proceeded to trial, and on appeal. Plaintiffs would risk recovering nothing, and Defendants would risk the possibility of an adverse judgment and fee award. The losing side at trial would likely appeal, further lengthening the litigation. It is in the best interests of all the Parties to settle -- rather than continuing to litigate -- this matter.

> c. *The stage of the litigation weighs in favor of approval of the settlement.*

This case was litigated for over three years and only settled right before trial. Discovery had been completed, a dispositive motion filed and ruled on, and even *in limine* briefs completed. Simply put, each side was aware of the other's factual and legal arguments, along with the evidence supporting same. The Parties were in a position to thoroughly evaluate the merits of their respective claims and defenses and the costs of continuing to litigate when the matter was resolved.

> d. *Plaintiffs' probability of success on the merits is uncertain.*

As discussed above, Plaintiffs' probability of success on the merits is not a certainty. Defendants contend that they never employed Plaintiffs while Plaintiffs argue the evidence obtained during discovery suggests otherwise. Settlement mitigates against the risk that Plaintiffs might recover nothing if they proceeded to trial, while Defendants can avoid incurring more fees and costs while also obtaining an outcome certain.

> e. *The Parties weighed the opinions of counsel in deciding whether to settle.*

52435760v.1

The Parties agree they weighed the opinions of their respective counsel in deciding whether to settle.

## IV. The Attorneys' Fees to be Paid as Part of the Settlement are Fair and Reasonable.

Finally, the Settling Parties agree that the amount allocated to Plaintiffs' counsel for attorneys' fees and costs ($80,000) is fair and reasonable. The Settling Parties advise the Court that the attorneys' fees and costs to be paid by Defendants under the Agreement are not based upon the amounts claimed to be owed to each Settling Plaintiff, such that there is no correlation between the amount of consideration to be paid to the Settling Plaintiffs and the attorneys' fees and costs to be paid by Defendants. Rather, the attorneys' fees and costs in this case were analyzed and reviewed in addition to -- and completely separate from -- the specific amounts claimed by each of the Plaintiffs. As explained in *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), where:

> [T]he plaintiff's attorney's fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

*Bonetti*, 751 F. Supp. 2d at 1228; *see also Dees*, 706 F. Supp. 2d at 1243 (quoting *Bonetti*)..

Such is the case here. The attorneys' fees and costs allocated to Plaintiff's counsel were negotiated separately from the amount to be paid to Plaintiffs and without regard to the amount Defendants had agreed to pay to the Settling Plaintiffs. As such, the recovery

9

52435760v.1

by the Plaintiffs was not adversely affected by the amount of the attorneys' fees and costs paid to their counsel.

## **CONCLUSION**

The Court should approve the settlement of this action. The settlement sum fairly balances the amounts Plaintiffs would seek at trial against the risk that Plaintiffs might recover nothing if the case were to proceed. Additionally, Plaintiffs' counsel will receive a reasonable fee in connection with the settlement. All factors germane to the Court's consideration of the fairness of the settlement weigh in favor of approval.

**WHEREFORE**, the Settling Parties respectfully request that this Honorable Court

    (i)    grant this Motion;

    (ii)    approve the settlement of this matter; and

    (iii)    enter an Order dismissing this case with prejudice.

DATED this 7th day of November, 2019.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| By: /s/ *Cheryl A. Luce* | By: /s/ *Brandon J. Hill* |
| *Attorneys for Defendants* | *Attorneys for Plaintiffs* |

52435760v.1

Noah A. Finkel (*pro hac vice* admission)
nfinkel@seyfarth.com
Kyle Petersen (*pro hac vice* admission)
kpetersen@seyfarth.com
Cheryl A. Luce (*pro hac vice* admission)
cluce@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60603
Phone: (312) 460-5000
Fax: (312) 460-7000

and

Dennis M. McClelland
dennis.mcclelland@phelps.com
Erin Malone
erin.malone@phelps.com
PHELPS DUNBAR LLP
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
Phone: (813) 472-7550
Fax: (813) 472-7570

MATTHEW K. FENTON
Florida Bar Number: 0002089
BRANDON J. HILL
Florida Bar Number: 37061
WENZEL FENTON CABASSA, P.A.
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: mkfenton@wfclaw.com
Email: bhill@wfclaw.com
Email: mk@wfclaw.com
Attorneys for Plaintiffs

and

Andrew A. Schmidt (*pro hac vice* admission)
andy@maineworkerjustice.com
Andrew Schmidt Law PLLC
97 India Street
Portland, Maine 04101
Phone: (207) 619-0320
Fax: (207) 221-1029

12

52435760v.1

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 7th day of November, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of this filing to all counsel of record.

*/s/Brandon J. Hill*
**BRANDON J. HILL**

52435760v.1